# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ROCKIES EXPRESS PIPELINE, LLC,

  Plaintiff,         Case No. 2:08-cv-554
                JUDGE GREGORY L. FROST
  v.              Magistrate Judge Terence P. Kemp

4.895 ACRES OF LAND, MORE OR LESS,
IN BUTLER COUNTY, OHIO
(PIPELINE RIGHT-OF-WAY SERVITUDE), et al.,

  Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) Plaintiff's motion for immediate possession (Doc. # 4);

(2) a memorandum in opposition filed by Defendant 3.97 Acres of Land, more or Less, in Butler County, Ohio (Doc. # 390);

(3) a memorandum in opposition field by Defendant 14 Acres of Land, More or Less, in Butler and Warren Counties, Ohio (Doc # 391);

(4) Plaintiff's reply memorandum (Doc. # 405);

(5) Plaintiff's notices of supplemental authority (Docs. # 368, 413);

(6) Plaintiff's supplemental memorandum in support of its motion (Doc. # 414);

(7) a joint supplemental memorandum in opposition filed by 3.97 Acres of Land, more or Less, in Butler County, Ohio and 14 Acres of Land, More or Less, in Butler and Warren Counties, Ohio ("Defendants" or "identified properties"); and

(8) Plaintiff's additional supplemental memorandum in support of its motion for

immediate possession (Doc. # 422), which Plaintiff has erroneously labeled as supplemental authority.

For the reasons that follow, the Court finds the motion for immediate possession well taken.

**I. Background**

Few of the facts related to the immediate possession issue are in dispute. The following facts are set forth for the limited purpose of addressing the immediate motion before the Court, however, and the parties should note that any findings of fact and conclusions of law made by a district court in addressing a request for injunctive relief are not binding at a trial on the merits. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

Plaintiff, Rockies Express Pipeline LLC, is a natural gas pipeline company that is in the business of constructing and using pipelines to transport natural gas in interstate commerce for public consumption. Of interest here is the company's current project of constructing an approximately 1,679 mile-long natural gas pipeline running from Rio Blanco County, Colorado to Monroe County, Ohio. The first two portions of this pipeline project are already in service, with the properties involved in this action falling within the third portion of the project, the REX East Pipeline Project.

On May 30, 2008, Plaintiff obtained a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission ("FERC"). Having obtained this certificate, Plaintiff now seeks to continue effectuating its pipeline construction project by acquiring permanent easements and temporary work spaces during construction and restoration

phases across numerous parcels of land that constitute the defendant properties in this litigation. Plaintiff therefore initiated this case on June 6, 2008, properly joining separate pieces of property in this single action regardless of the fact that most of the properties are not owned by the same landowners. *See* Fed. R. Civ. P. 71.1(b).

Plaintiff's motion for immediate possession initially targeted numerous properties, but Plaintiff has electively limited the scope of the motion to only two defendants, 3.97 Acres of Land, More or Less, in Butler County, Ohio and 14 Acres of Land, More or Less, in Butler and Warren Counties, Ohio. (Doc. # 385.) The motion came on for an in-court hearing on October 2, 2008, at which time the parties presented evidence and argument in support of their respective positions. Over the weeks since the hearing, the parties have since engaged in filing supplemental authority and additional briefing that has necessitated continuous revision of this decision. Although much of these filings were made in curious contravention of the Local Civil Rules, *see* S.D. Ohio Civ. R. 7.2(a)(2), no party has asked the Court to strike any briefing, and the Court declines to *sua sponte* strike any briefing filed without leave. This Court shall therefore proceed to consider the merits of Plaintiff's motion within the context of the full briefing submitted by the parties.

## II. Discussion

The first substantive issue necessitating disposition is whether Plaintiff *can* be entitled to immediate possession of property in an action such as the case *sub judice*. The second issue is, if Plaintiff can obtain such relief, whether Plaintiff *is* entitled to such relief under the facts before this Court.

In regard to the first issue, the Court agrees with those numerous courts that have

3

concluded that a plaintiff can obtain immediate possession in cases such as this litigation. *See* Doc. # 4, at 14-15 (collecting cases by circuit). Without unnecessarily reproducing the analysis employed in those cases here, the Court adopts and incorporates by reference this supporting authority. *See also Gulf Crossing Pipeline Co., LLC v. 7.50 Acres*, No. 4:08CV178, 2008 WL 2774697, at *3-4 (E.D. Tex. July 14, 2008); *Gulf Crossing Pipeline Co. LLC v. 7.50 Acres*, No. 4:08-CV178, 2008 WL 2774534, at *5 n.1 (E.D. Tex. July 8, 2008) (report and recommendation collecting over a dozen cases supporting immediate possession).

Simply having a possibility of obtaining immediate possession does not necessarily mean that Plaintiff is entitled to immediate possession. Plaintiff's motion for immediate possession is a request for injunctive relief and therefore must presumptively succeed or fail under the traditional test employed for both temporary restraining orders and preliminary injunctions applies. The Sixth Circuit Court of Appeals has explained the inquiry involved in addressing either a motion for a temporary restraining order or for a preliminary injunction:

> "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997) (citations omitted)). *See also Edward Rose & Sons*, 384 F.3d at 261 (quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)). The court of appeals has further explained that a district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved. *Edward*

4

*Rose & Sons*, 384 F.3d at 261.

Application of this test to the facts of this case favors granting injunctive relief. Regardless of whether it need be demonstrated at this juncture–an issue on which the parties do not agree–Plaintiff has a substantive right under the Natural Gas Act to condemn the subject property right. *See* 15 U.S.C. § 717f(h). Plaintiff has its FERC certificate, the parties have failed to reached an agreement resulting in the acquisition of the property rights at issue, and the condemnation is for a necessary and public purpose. With this threshold issue favoring Plaintiff, the Court then recognizes that Plaintiff has a strong likelihood of success on the merits. Permanent right-of-way servitudes and temporary work space easements are necessary, and Plaintiff is notably likely to obtain them in this litigation even absent immediate possession.

Plaintiff has also demonstrated that irreparable injury will result if immediate possession is not obtained. The Court recognizes that some of the harm Plaintiff asserts is largely self inflicted. The Court also recognizes that not all contracts with builders have been finalized and that there was a lack of detailed evidence on the precedent agreements surrounding the pipeline project. But the Court credits the admittedly general testimony that some contracts are in place and there are FERC deadlines involved. An inability to proceed with planned construction and meet the existing deadlines will result in delayed construction and delayed or lost service to the public that might otherwise be avoided by immediate possession, risking increased costs and ancillary problems such as loss of workers. The permits Plaintiff currently enjoys are also not open-ended and necessitate compliance. Thus, at least the two identified defendant properties involved in the current motion fall within the limited harm that would accompany delay.

There has also been evidence introduced before this Court of negotiations between

5

Plaintiff and the landowners of the identified defendant properties targeted by the motion for immediate possession. Plaintiff's final pre-suit offers of $216,000 in light of a $72,000 appraisal and $86,466 in light of a $37,000 appraisal are notable. Although the landowners argue that the negotiations cannot constitute required good faith negotiations because they have not obtained all of the information they seek, the Court recognizes that most if not nearly all of the information sought goes to the issue of the amount of damages that would constitute the final just compensation award and does not prove dispositive of the issue of Plaintiff's right to immediate possession. Detailed construction plans can assist negotiations, but are not as indispensable as Defendants urge. Additionally, the imposition of additional costs on Defendants not presented during negotiations will be addressed in the just compensation awards following any necessary requisite discovery. Thus, assuming without deciding that Defendants are correct that an inability to agree mandates good faith negotiations, Defendants' interpretation of what constitutes such a purported good faith pre-condition still overreaches. There is evidence here of strong negotiation tactics, but insufficient evidence of an inability to agree that displays a lack of good faith. Accordingly, the Court need not decide the extent of any requisite good faith inherent in 15 U.S.C. § 717f(h).

Additionally, issuance of an injunction would not present substantial harm to others, but would in fact serve the public interest in that it would aid in ensuring that the FERC-approved pipeline deadline is not delayed beyond the already adjusted target date. These are all factors supporting injunctive relief. *See Gulf Crossing Pipeline Co., LLC v. 7.50 Acres*, No. 4:08CV178, 2008 WL 2774697, at *3-4 (E.D. Tex. July 14, 2008).

The Court recognizes that Defendants dispute that the ability to obtain immediate

possession via injunction exists. This Court has considered the minority view expressed in the case law upon which Defendants rely and has agreed with the overwhelming majority of those courts that have considered the issue. Although there is no absolute right to an injunction permitting immediate possession, the Court concludes that a pipeline company has the ability to obtain such relief under the appropriate circumstances.

This Court also recognizes that Defendants have argued that this Court cannot grant immediate possession because Plaintiff cannot even begin construction on the properties in question due to the fact that FERC and the Ohio EPA have not approved actual construction. Circumstances partially changed after Defendants initially made this argument, however. Post-hearing information submitted to this Court indicates that FERC has released Plaintiff to begin construction on the phase of the pipeline construction project that includes the property identified as 3.97 Acres of Land, More or Less, in Butler County, Ohio. (Doc. # 422, Ex. A.) Plaintiff has also submitted evidence that the Ohio EPA has withdrawn its rehearing request–as foreshadowed in an email submitted to the Court–and this withdrawal apparently enables FERC to release Plaintiff to begin construction on the property identified as 14 Acres of Land, More or Less, in Butler and Warren Counties, Ohio. (Doc. # 422, Ex. B.) Plaintiff has also presented a compelling argument as to why the Forman property issues and Ground Water Consortium comments do not defeat Ohio's issuance of a 401 permit.

In light of the foregoing information, the argument opposing Plaintiff's motion in regard to the 3.97 Acres of Land, More or Less, in Butler County, Ohio is now moot. This leaves the issue of whether, in the absence of FERC approval to commence construction, the Court can grant immediate possession in regard to the properties constituting 14 Acres of Land, More or

Less, in Butler and Warren Counties, Ohio. Plaintiff argues that a release to begin construction is not a prerequisite for immediate possession. This Court recognizes Plaintiff's submitted authority that numerous courts have granted such possession even without permission to begin immediate construction. *See Guardian Pipeleine, L.L.C. v. 295.49 Acres of Land*, Nos. 08-C-0028, 08-C-54, 08-C-29, & 08-C-30, 2008 WL 1751358 (E.D. Wis. Apr. 11, 2008); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F. Supp. 2d 976 (N.D. Ill. 2002); *Northwest Pipeline Corp. v. Douglass*, 197 F. Supp. 2d 1241 (E.D. Wash. 2002); *Northern Border Pipeline Co. v. 64.111 Acres*, 125 F. Supp. 2d 299 (N.D. Ill. 2000); *USG Pipeline Co. v. 1.74 Acres*, 1 F. Supp. 2d 816 (E.D. Tenn. 1998). The Court also concludes that the issues surrounding the 401 permit, the Forman property, and the Ground Water Consortium comments do not defeat granting the injunctive relief sought.

Plaintiff has demonstrated a substantial likelihood of success on the merits so as to support injunctive relief entitling it to immediate possession of the identified properties.

### III. Conclusion

Having determined that Plaintiff's motion is well taken, the Court **ORDERS**:

**(1)** The Court **GRANTS** Plaintiff's motion for immediate possession (Doc. # 4), although the Court modifies several of the requested conditions accompanying the ordered injunctive relief;[1]

---

[1] For example, Plaintiff sought to "provide security through a Bond in the amount of the total good faith offers for the property rights at issue." (Doc. # 4, at 13.) The posting of such a bond would not afford as swift compliance with the expediency provision of Federal Rule of Civil Procedure 71.1(j)(2) as the elective pre-trial or hearing distribution ordered today by the Court. Accordingly, the Court has conditioned injunctive relief on compliance with the procedures and conditions set forth in this decision, which would allow for faster distribution of partial or full distributions to landowners.

**(2)** The Court recognizes and grants Plaintiff the right to condemn Right-of-Way Servitudes on 3.97 Acres of Land, More or Less, in Butler County, Ohio and 14 Acres of Land, More or Less, in Butler and Warren Counties, Ohio;

**(3)** The Court grants Plaintiff immediate possession of the Right-of-Way Servitudes on the identified defendant properties for all construction activities approved by FERC;

**(4)** Pursuant to Federal Rules of Civil procedure 65(c), 67, and 71.1(j)(1), said right to immediate possession of each identified defendant property is contingent upon Plaintiff first depositing with the Clerk of Court an amount equal to the last appraisal made for that identified defendant property;

**(5)** Pursuant to Federal Rules of Civil procedure 65(c), 67, and 71.1(j)(1) and as an additional prerequisite to immediate possession of an identified defendant property, Plaintiff shall also post a surety bond in an amount equal to at least 25% greater than the last appraisal made for that identified defendant property, with this additional sum serving as sufficient security to protect the interests of the landowner(s) in any damages that may be awarded that exceed the deposited funds;

**(6)** No party should construe the minimum 25% bond amount as any indication of the floor or ceiling of the ultimate amount of just compensation to which any landowner is entitled, given that the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as this amount;

**(7)** Said bond shall be conditioned on the fact that Plaintiff shall pay all final compensation damages awarded in excess of the deposited amount, and if such payments are made, then the bond shall be null and void upon full payment having been made; and

**(8)** Because the Court and counsel must work to expedite the distribution of deposited funds pursuant to Federal Rule of Civil Procedure 71.1(j)(2), the deposit of any funds for an identified defendant property shall constitute Plaintiff's agreement that the landowner can immediately access all or any portion of the deposited funds, with the understanding that such withdrawal is at the landowner's peril and that if the ultimate compensation award is less than the amount withdrawn, the landowner will be liable for the return of the excess with appropriate interest.[2]

The Court will contact the parties to schedule prompt compensation hearings to determine the just compensation to be paid by Plaintiff to the identified defendants for the Right-of-Way Servitudes.

**IT IS SO ORDERED**.

       /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[2] In a well-reasoned report and recommendation, a magistrate judge explained the effect of a deposit-and-withdrawal order similar to that effectuated by today's decision:

> Neither the deposit nor the withdrawal of any portion of the fund should prejudice or otherwise affect any of the parties' rights with respect to a determination of just compensation, and despite any deposit into the registry of the Court, [the pipeline company] has the right to assert that the amounts deposited as well as any amounts offered to each of the Defendants exceed the just compensation due each of the defendants.

*Gulf Crossing Pipeline Co. LLC v. 7.50 Acres*, No. 4:08-CV178, 2008 WL 2774534, at *4 (E.D. Tex. July 8, 2008).