UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


ROCKIES EXPRESS PIPELINE, LLC,

           Plaintiff,                        **Case No. 2:08-cv-554**
                                                          **JUDGE GREGORY L. FROST**
         v.                                   **Magistrate Judge Terence P. Kemp**

4.895 ACRES OF LAND, MORE OR LESS,
IN BUTLER COUNTY, OHIO
(PIPELINE RIGHT-OF-WAY SERVITUDE), et al.,

           Defendants.


## OPINION AND ORDER

      This matter is before the Court for consideration of the Report and Recommendation of the Commission regarding the McCarty property.  (Doc. # 831.)  Also before this Court are Objections (Doc. # 838) filed by Defendants Jeffrey and Maureen McCarty, a memorandum in opposition (Doc. # 841) filed by Plaintiff, Rockies Express Pipeline LLC, a reply memorandum (Doc. # 864) filed by Defendants, and a sur-reply (Doc. # 866) filed by Plaintiff.  For the reasons that follow, this Court finds the Objections partially well taken and remands the Report and Recommendation to the Commission for further consideration.

      In the May 19, 2010 Report and Recommendation, the Commission recommended that Defendants be compensated in the amount of $113,147.10.  This recommendation was the result of a unanimous decision reached by Commission Chairperson Gregory M. Travalio, Commissioner Craig B. Paynter, and Commissioner F. Franklin Hinkle, II.  (Doc. # 831, at 10-11.)  Defendants have subsequently objected to the Commission decision on the grounds that

Commissioner Paynter has a disqualifying conflict precluding his service on the Commission, that the Commission abused its discretion in its factfinding, that the Commission has a bias or prejudice against landowners, and that the Commission held the landowners to a purportedly impossible or impracticable standard of proof.

The first objection concerns this Court.  Defendants assert that a disqualifying conflict exists because Plaintiff's lead counsel, Gregory Brunton, represented Chester Willcox & Saxbe in a malpractice action from 2005 until its conclusion in April 2009.  Commissioner Paynter is a partner in the law firm of Chester Willcox & Saxbe.  Both Commissioner Paynter and Attorney Brunton failed to disclose to this Court or to the parties the fact of this prior representation.

Much of the parties' briefing concerning the representation issue is either incorrect or wholly irrelevant to the core issue of whether Commissioner Paynter properly served in the McCarty proceedings.  For example, Defendants assert that Federal Rule of Civil Procedure 71A applies, despite the fact that Rule 71.1 replaced Rule 71A approximately three years ago. Defendants also insist that the rule pertaining to commissioners–and here they should be citing Rule 71.1–incorporates Rule 53, which in turn incorporates the disqualification standards set forth in 28 U.S.C. § 455.  This overlooks the fact that Rule 71.1 only incorporates select provisions of Rule 53, an incorporation that does not expressly include Rule 53(a)(2) or 53(b)(3), the provisions related to § 455.  *See* Fed. R. Civ. P. 71.1(h)(2)(D) (incorporating Rule 53(c), (d), (e), & (f)).

Additionally, Defendants attempt to read into this Court's opening remarks at the pre-appointment examination of the Commissioners that which is not there.  Defendants "respectfully suggest" that the Court's recognizing that it had vetted the then-proposed

commissioners "acted effectively to deter questioning of the commissioners to explore potential conflicts." (Doc. # 864, at 4.)  This incorrect assertion dubiously attempts to spin remarks concerning initial vetting into a bar on the ability of counsel to examine the commissioners. Such errors do little to reach the substantive merits of the representation issue.

What Defendants do get right, however, is that "[i]t is safe to conclude that Commissioner Paynter made no disclosure that his law firm was being represented by Mr. Brunton and the firm of Reminger Co., LPA in response to the questioning by the court." (Doc. # 864, at 4.)  Plaintiff attempts to direct this Court away from this representation issue by arguing that Defendants forfeited the right to challenge a commissioner now by failing to lodge an objection previously.  What this argument overlooks is that the issue of Attorney Brunton's representation and the potential conflict it presents came to light well after the appointment of the commissioners.  It would be inequitable to penalize Defendants for failing to object previously on information Plaintiff, its counsel, and a commissioner failed to disclose.  Although Plaintiff is correct that Defendants' counsel could have inquired into potential conflicts so as to have made a timely objection prior to the appointment of the commissioners, Commissioner Paynter and Attorney Brunton nonetheless should have revealed the representation unprompted by such inquiry.

Plaintiff also attacks the applicability of § 455 and questions whether Defendants have complied with its procedures.  That statute provides in relevant part that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Rule 53 in turn makes the statute relevant to special masters appointed under that rule, providing that "[a] master must not

3

have a relationship to the parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. § 455, unless the parties, with the court's approval, consent to the appointment after the master discloses any potential grounds for disqualification." Fed. R. Civ. P. 53(a)(2). The federal rule also requires a potential special master to file an affidavit disclosing any § 455 ground for disqualification prior to appointment. Fed. R. Civ. P. 43(b)(3)(A). As noted above, however, Rule 71.1 does not expressly adopt, incorporate, or otherwise make relevant the portions of Rule 53 that would inject § 455 into commission proceedings.

Another court has discussed the issue of whether § 455 applies to Rule 71.1 commissioners, explaining:

> An unstated premise of appellants' position is that § 455 applies to commissioners, even though the statute is addressed only to justices and judges of the United States. Other circuits have disagreed about the application of § 455 to special masters and land commissioners. Compare *Morgan v. Kerrigan*, 530 F.2d 401 (1st Cir. 1976) (no), and *Rios v. Enterprise Association Steamfitters*, 860 F.2d 1168 (2d Cir. 1988) (no), with *Jenkins v. Sterlacci*, 849 F.2d 627, 630-32 (D.C.Cir. 1988) (yes), and *United States v. Werner*, 916 F.2d 175 (4th Cir. 1990) (yes). To resolve this conflict the Supreme Court amended Fed. R. Civ. P. 53(a)(2) in 2003 to subject special masters to the requirements of § 455–but it left Rule 71.1 alone. It says that commissioners are covered by particular subsections of Rule 53. Those subsections are (c), (d), (e), and (f), which have nothing to do with § 455. See Fed. R. Civ. P. 71.1(h)(2)(D), and its predecessor Fed. R. Civ. P. 71A(h). The subsection of Rule 53 that incorporates § 455 for masters is not among those to which Rule 71.1 points.

> Rule 71.1 treats commissioners more like jurors than like judicial officers. Parties may "examine" commissioners, see Rule 71.1(h)(2)(C) and ask the judge to excuse them for cause. This is consistent with the role commissioners play. Unlike masters, who act as surrogates for a district judge, commissioners hear evidence and make proposals to the court on disputed questions of fact. Judges then make independent decisions. Commissioners are supposed to bring expertise to that task, and they could not do so if the very knowledge and experience that made their views desirable also disqualified them. Nor would it be easy for courts to recruit lawyers to serve on commissions if that foreclosed continued legal practice in fields related to the condemnation proceeding. Since 2003, when the Civil Rules brought masters

4

within § 455 while leaving commissioners out, no court has held that § 455 supplies the standards for members of commissions in condemnation proceedings.

*Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554, 556 (7th Cir. 2008). Notably, the Seventh Circuit then went on to assume that § 455 applied to the Rule 71.1 commissioner, but held that it "need not decide whether a fully informed person would find a problem using the objective standard that applies under § 455(a) . . . because the [land]owners did not raise this subject until after the commission had made its decision." *Id.* at 557.

Of import to the court of appeals' decision was that "arguments under § 455(a) must be presented early in the proceeding; a problem of appearances is not a reason to set aside a decision that was unaffected by any actual bias." *Id.* The Seventh Circuit then explained:

> Appellants say that their delay is justifiable because [the commissioner] did not spontaneously reveal his law firm's book of business, but then he did not have a duty to do so. Rule 71.1(h)(2)(C) provides that litigants may examine a proposed commissioner at the outset; a litigant who lets this opportunity pass, then looks up the commissioners in Martindale-Hubbell after the proceedings have concluded, has no one to blame but himself.

*Id.* at 557-58. Thus, again noting that "it is an open question whether § 455 applies," the court of appeals concluded:

> [C]ommissioners in condemnation proceedings make recommendations rather than decisions. An Article III judge whose impartiality is beyond question reviewed the commission's recommendation and found its conclusions sound. It would be pointless to empanel another commission to make a fresh recommendation, when the judge has already ruled on the merits. Judges deal with slanted recommendations all the time; lawyers are advocates, to whose advice judges apply critical analysis. Appellants offer no reason to think that the district judge failed to appreciate the significance, if any, of the fact that [the commissioner's] law firm has pipelines as clients.

*Id.* at 558.

At first blush, this approach appears to be an enticing way to resolve today's dispute. But

as explained above, it is perhaps inequitable to place the onus of discovering the fact of representation on landowners' counsel when the attorney and commissioner involved in today's dispute most easily could have–and simply should have–disclosed the representation issue.  The fact that Attorney Brunton represented Commissioner Paynter's firm is not something that could easily be gleaned from review of Martindale-Hubbell, for example.

Also distinguishing the Seventh Circuit's *Guardian Pipeline* analysis is that here, unlike in that case, no district judge has already ruled on the merits of a commission recommendation. The situation *sub judice* is not too far removed from a juror becoming unavailable before a trial court ultimately accepts the jury's verdict.  There is an easy and timely remedy to the conflict issue here that was unavailable to the reviewing court in *Guardian Pipeline* given the procedural posture of that case.

The end result of this Court's review of the briefing, Rule 71.1, Rule 53, § 455, potentially relevant case law, and advisory opinions and publications regarding ethics, including the Federal Judicial Center's publication *Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144*, is a simple conclusion: it does not matter whether § 455 technically applies, because the type of concerns animating that statute *should* apply to commissioners and *can* be applied by this Court under its inherent authority to select and appoint commissioners, as well as the duty of this Court to review their work.

In other words, rather than concluding that there are no disqualification standards for Rule 71.1 commissioners, a proposition that refusal to impute the § 455(a) standard might suggest, logic and equity dictate that this Court can and should consider today's issue as informed by the underlying standard that applies to every justice, judge, magistrate judge, and

special master who sits in any decisionmaking role.  The same basic standard can apply to jurors.  Phrased in its most fundamental characterization, the standard is *does this possibly look bad*.  The answer is yes.

This is not a situation in which a Department of Justice attorney was representing a federal judge who has been sued in his or her official capacity.  That scenario that does not necessitate recusal under the standard set forth in Canon 3C of the Code of Conduct for United States Judges, a standard that echoes the § 455(a) test.  *See* Judicial Conference of the United States, Committee on Codes of Conduct Advisory Opinion No. 102.  Instead, this is closer to a situation in which a judge involved in an individual capacity lawsuit is represented by a private law firm.  The situation is not unlike where a judge needs to recuse himself or herself from a case in which the attorney appearing in the case represents, in other litigation, a class of which the judge is a member or a defendant corporation that the judge owns.  Perhaps even more analogous, the situation here is close to a scenario in which a prospective or empaneled juror's family or business is represented by the counsel arguing the case in which the juror would serve.

Regardless of whether the other litigation could have affected Commissioner Paynter's financial interests directly, it could have affected at the least the reputation of his firm.  Based on an objective standard, a perceived conflict exists.

The Court absolutely cannot fathom how Commissioner Paynter and Attorney Brunton failed to bring to the Court's attention the representation issue.  Regardless of the applicability of Rule 53(a)(2), § 455, or any advisory opinion from any law-related body in any part of this country, much less the state rules of professional conduct that the parties debate, common sense

7

*alone* should have prompted disclosure to this Court.  The dual non-disclosure is simply confounding.  To say that the Court finds this issue frustrating would be an understatement.  The Commission's purpose is to aid in the expeditious disposition of the compensation cases before the Court, not to present easily avoidable complications that have delayed the process not only in regard to the McCarty property but also in regard to other landowners who have seen consequent delays in their hearings or in the post-hearing process.

There is, however, no basis whatsoever to suspect or assign any degree of malfeasance to Commissioner Paynter or Attorney Brunton.  To the contrary, this Court has found and continues to find that both individuals conduct themselves ethically, competently, and professionally so as to engender the respect of their peers.  There is thus an absence of cause to believe that the sloppy non-disclosure involved here is related to any favoritism or an attempt to curry a strategic advantage.  It is simply an errant lapse in attention that no doubt is now unfortunately a source of embarrassment for Commissioner Paynter and Attorney Brunton.

This is not to say that the non-disclosure avoids being problematic.  What might be obvious to Commissioner Paynter and Attorney Brunton–that they are professionals and can easily separate their roles and functions in diverse professional situations–might not appear as obvious to a layperson.  That the non-disclosure here most likely arose from the fact that a question of partiality never even crossed these professionals' minds does not mean that others, such as Defendants, would not ask the question.  The point is thus not whether Plaintiff/Brunton sought to gain an advantage, whether Commissioner Paynter was willing to give an advantage, or both.  The Court does not credit such groundless possibilities.  Rather, the point today–the problem–is the mere appearance of impropriety.

If the average man or woman on the street would pause at the representation involved here, then the risk of even an ultimately groundless-given-who-is-involved perception of possible partiality is enough to warrant select disqualification in the absence of party waiver. There may be no hint of actual partiality, but even a chance of perceived impropriety is enough to call for overcompensation in the name of obviating any questions as to the fairness of the proceedings.  Even if Rule 71.1, Rule 53, § 455, and any potentially if perhaps only tangentially relevant advisory opinions do not expressly or even necessarily call for accepting Defendants' impression of the proceedings as tainted, this Court's concern for unquestionable actual and apparent propriety compel today's disposition.  The Court would remove a prospective juror from the jury pool if he or she, or a family member, were represented by counsel.  This Court would also act to address such a situation if, during jury deliberations, it came to light that a juror has such a professional connection with trial counsel.  The same concern for avoiding situations in which impartiality might reasonably be questioned animates this Court's actions today.

It is the Order of this Court as follows:

(1) The Court finds the objection to the participation of Commissioner Paynter in the McCarty proceedings well taken for the limited reasons set forth herein.  This Court emphasizes that its decision in no way reflects poorly upon the notable integrity, character, ability, or professionalism of either Commissioner Paynter or Attorney Brunton.  Instead, this decision is simply a cautionary measure undertaken to ensure that there is not even a possibility of an appearance of impropriety.

(2) The Court remands the McCarty Report and Recommendation to the Commission for

further consideration.  Upon remand, the Commission Chairperson shall appoint one of the alternate commissioners to join Chairperson Travalio and Commissioner Hinkle in new deliberations.  The Commission panel shall then submit a new Report and Recommendation based upon the deliberations of Travalio, Hinkle, and the replacement commissioner, all of whom shall not be bound by either the prior deliberations or the prior Report and Recommendation.  Depending upon the new deliberations, the new Report and Recommendation may be identical to the prior Commission decision or different than that decision, in whole or in part, just as if a new jury were sent into new deliberations after the replacement of a juror.  This remand does not invalidate the fact that two of the three other commissioners involved in the McCarty recommendation agreed to that recommendation.  Rather, it recognizes that the discussions involved in reaching that decision involved Commissioner Paynter and thus may have been influenced by his participation.  Deliberations begun anew erase any question as to the degree of influence his input may or may not have had.

(3) Having remanded the submitted Report and Recommendation for new deliberations, the Court finds the remainder of Defendants' objections to be moot.  Given that this conclusion does not target the merits of any of Defendants' substantive objections, Defendants remain free to make whatever timely objections they deem fit to the new Report and Recommendation, just as Plaintiff remains free to do likewise.

(4) Because the representation of Chester Willcox & Saxbe has ended, the Court concludes that Commissioner Paynter may continue to serve on the Commission.  This Court recognizes that, like Jeffrey and Maureen McCarty, other parties may have similar concerns regarding the concluded relationship between Commissioner Paynter's law firm and Attorney

10

Brunton.  **If any party objects to Commissioner Paynter serving on the Commission panel presiding over their compensation hearing, that party must file a written objection with the Commission Chairperson <u>no later than fourteen days prior to the scheduled hearing date</u>.** In the event that such an objection is filed, the Commission Chairperson shall appoint one of the two alternate commissioners to serve in that hearing in the place of Commissioner Paynter.  In the event that no such timely objection is filed, the Court and the Commission will have deemed the parties involved to have waived or forfeited any concern (arising from the prior representation) over Commissioner Paynter's service in their proceedings.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

11