**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
COMMISSION TO DETERMINE COMPENSATION**

| | |
|---|---|
| ROCKIES EXPRESS PIPELINE, LLC : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:08-CV-554 |
| vs. : | |
| : | |
| 4.895 ACRES OF LAND, MORE OR LESS, : | |
| IN BUTLER COUNTY, OHIO : | |
| (PIPELINE RIGHT-OF-WAY SERVITUDE) : | |
| JACK AND BRIGETTE CORNETT : | |
| AND UNKNOWN OWNERS, et al. : | |
| : | |
| Defendants. : | |

## REPORT AND RECOMMENDATIONS OF THE COMMISSION TO DETERMINE COMPENSATION WITH RESPECT TO THE PROPERTY OWNED BY FLORENCE McKINLEY

A hearing was held by The Commission in the case of Rockies Express Pipeline, LLC v. 4.895 Acres of Land, More or Less in Butler County, Case No. 2:08-CV-554, on September 1-3, 2010, to consider compensation due Florence McKinley, owner of 81.805 acres in Monroe, Butler County, Ohio. The Commission conducted its deliberations on September 9, 2010.

The Commission approached its deliberations in three steps. First, the Commission determined the highest and best use prior to the taking of the permanent, non-exclusive easement by Plaintiff. Second, it evaluated whether that highest and best use had changed as a result of the taking of the easement. Finally, using its decisions in the first two steps, it decided on the difference in value of the entire McKinley property before and after the taking of the easement.

In determining the highest and best use prior to the taking of the easement, the Commission applied the standard that the use must be "financially feasible, lawful, and reasonably capable of being accomplished within a reasonable time."

The subject property contains 81.805 acres and is used for agricultural purposes and as a residential homestead.  The property is rectangular and fronts on Todhunter Road along its northern edge.  Salzman Road extends north from State Route 63 and terminates into the southern boundary of the property.  The property is encumbered by a 12" BP Pipeline easement that extends along its eastern and southern edges, an 8" BP propane line easement that extends diagonally northeast from the central portion of the property to the northeast corner of the property, an overhead HTVL situated within the southern portion of the property and a 100' power line easement that extends east-west through the northern-central portion of the property.

The acquisition being sought by Rockies Express Pipeline, LLC consists of a 1.59 acre permanent easement extending east-west through the southern portion of the property and adjacent 2.38 acre temporary work space and 0.88 acre additional workspace easements.  The proposed permanent and temporary workspace easements are adjacent to the northern edge of the existing HTVL easement.  A 0.13 acre temporary access road easement is also required.

In conducting its deliberations, the Commission adhered to the instructions provided to it by the Court.  Included in these instructions were the admonitions of evidence, which included the direction that the Commission is to "consider only the evidence in the hearing."  The Court also advised the Commission that it is not limited to the mere statements of the witnesses but is also permitted to draw, from the facts that the Commission finds have been proved, such reasonable inferences as seem justified in light of each Commissioner's own experiences, reason, and common sense.  Court Order dated February 12, 2009, p. 11.

Testifying on behalf of Defendant at the Commission hearing were Mark Koeninger, Craig Elliot, Douglass Hine, Eric Gardner, and Joyce Jarbo.  Testifying on behalf of Plaintiff were James A. Herbig, David Oakes, and Joseph Rob Smyjunas.  In reaching its conclusions, the Commission considered the testimony and credibility of each witness and all of the exhibits admitted into evidence.

The Commission hereby makes the following findings:

**FINDING #1:  Pre-Taking Highest and Best Use**.  The Commission finds that the highest and best use of the 81.805 acre parcel prior to the taking is light industrial and that such development can occur within the reasonably foreseeable future.  The present residential and agricultural improvements do not provide value to the property.

This finding is consistent with the testimony of the experts of both parties, the present zoning of the property, and the uses of property in the area.  The acreage of 81.805 was stipulated by both parties.

**FINDING #2:  Post-Taking Highest and Best Use**.    There was conflicting testimony as to the highest and best use of the McKinley property subsequent to the taking.  Mr. Koeninger, Mr. Hine, and Mr. Gardner all testified that they believed that the existence of the Rockies pipeline made the property no longer developable as light industrial property.  On the other hand, Mr. Herbig, Mr. Oakes, and Mr. Smyjunas all opined that the property could continue to be developed as light industrial property with the Rockies pipeline easement.

The Commission carefully weighed all of the evidence and concluded by a preponderance of the evidence that the Rockies pipeline did not preclude development as light industrial property.  The Commission was unconvinced by the testimony of Plaintiff's experts that the Rockies pipeline and the Potential Impact Radius ("PIR") of the pipeline would make the property so undesirable to a developer that the developer would reject the property as unsuitable for light industrial development.  None of Defendant's experts testified that they had ever considered PIR in determining whether to develop a light industrial property nor could they cite a single case in which this had occurred.

For example, Mr. Hine, while generally a credible and forthright witness, admitted that he had never taken PIR ("Potential Impact Radius") into account in developing light industrial property and was not even aware of the term prior to this litigation.  Attempts to explain why he would treat this property differently were unconvincing to the Commission.

Further, the Commission found the testimony of Mr. Smyjunas to be credible and convincing on this issue. Mr. Smyjunas recently developed nearby property (later described in this Report as the "I-75 Corridor" property) that has multiple natural gas pipelines on it, including one as large as 36" in diameter. Mr. Smyjunas indicated that he did not take the PIR of any of these pipelines into account and that he would treat the Rockies pipeline in a similar manner.

The Commission also found the testimony of Mr. Gardner lacked credibility and was unconvincing on this issue. Mr. Gardner concluded that the area located within the Potential Impact Zone & High Consequence Area caused a reduction in the highest and best use of the McKinley property to an agricultural use, thus creating a significant diminution in value. Mr. Gardner relied heavily upon unscientific surveys for his opinion and lacked supportable market evidence. The surveys had no indicia of reliable scientific surveys and consisted entirely of inadmissible and unreliable hearsay. Additionally, Mr. Gardner was unaware that the I-75 Corridor property sale used within his appraisal report was encumbered with a 36" pipeline even though his company, Cassidy Turley, represented Mr. Smyjunas for the purchase. Moreover, the Commission found Mr. Gardner to be sometimes evasive and argumentative upon cross-examination. The Commission finds that Mr. Gardner's testimony lacked credibility and was thereby substantially discounted.

As mentioned, the testimony was sharply conflicting on the question of the highest and best use of the property after the take. Defendant presented credible testimony, especially through Mr. Hine, that developers would not develop the land as light industrial, given the Rockies pipeline. Conversely, Plaintiff presented evidence through the testimony of Mr. Smyjunas and Mr. Oakes that the property could be developed for a light industrial use. The fact that the I-75 Corridor property was developed with the presence of multiple, substantial natural gas pipeline easements was convincing. With conflicting testimony, it is the task of the Commission to decide which party has carried its burden *by a preponderance of the evidence*. The Commission concludes that Plaintiff has shown by a preponderance of the evidence that the property size and location of the proposed easement does not impede development outside of its boundaries, that the property remains industrial in character in nature, and that there is insufficient probative evidence of a significant change in the highest and best use.

**FINDING #3: Pre-Take Market Value.** The Commission finds that the pre-take market value of the McKinley property is Two Million Nine Hundred Forty-Four Thousand Nine Hundred Eighty Dollars ($2,944,980.00), or Thirty Six Thousand Dollars per acre ($36,000.00/acre).

In making this determination, the Commission gave significant weight to the properties ("Hayneedle" and "I-75 Corridor") listed as comparables by both appraisers (Gardner Land Sales #1 and #2; Herbig comparables #2 and #6). The Commission greatly discounted Gardner Land Sales #3 and #4 as too remote in distance and market. To a lesser degree, the Commission also discounted the "listed," but unsold, properties included by Appraiser Herbig.

On examination of the comparables, the Commission found Gardner Sale #1, the I-75 Corridor property, to be of a superior location (i.e., it is direct proximity to I-75). There was credible unrebutted testimony that this provides a significant advantage to a developer considering light industrial development. Although a larger parcel's price-per-acre value is often less due to economies of scale, the Commission concluded that its superior location reasonably offset any larger size discount relative to the McKinley tract. Moreover, the Commission's decision to give a per acre value to the McKinley property greater than the I-75 Corridor property reflects any residual discount for the greater size of the I-75 Corridor property. Although the I-75 Corridor property is encumbered with three (3) pipelines, the McKinley property is likewise significantly encumbered with various easements. The existing pipelines did not prevent or inhibit the development of the I-75 Corridor property.

The Commission found the Hayneedle property (Gardner Sale #2) to be similar to the McKinley property in size, shape, location, and time of sale. The sale, however, had certain attributes that justifiably enhanced its value relative to the McKinley property. Specifically, it had abatements in place and it was not encumbered by existing utility line easements such as the McKinley property. As such, the Commission determined that downward relative adjustments in value were appropriate. At the hearing, the Commission Chair admitted the testimony of David Oakes as to the pre-take value of the property. The Commission Chair, upon further consideration of the memoranda submitted by both parties, reaffirms the decision made at the hearing and finds the cases submitted by Defendant to be inapposite. However, the Commission did not give significant weight to Mr. Oakes' opinion on this issue as he is not a qualified appraisal expert.

Multiplying 81.805 acres by $36,000 per acre provides an applicable market value of $2,944,980.

**FINDING #4: Compensation for the Easements.** The Commission finds that the the compensation due for the specific elements of the take are as follows:

    A. The value of the permanent take for the 1.59 acre easement area is Thirty Four Thousand Three Hundred Forty Dollars ($34,344.00). The Commission determined damages to the 1.59 acre permanent, non-exclusive easement area by multiplying the acreage by the market value of the land area then discounting that number by the percentage of use that is lost. Appraiser Gardner used a rate of 100% of the fee simple value. However, the Commission finds that the encumbered area can be improved with site improvements such as parking lots, drive areas, and landscaping, and that Mr. Garnder's testimony that the land is completely valueless is unsupported, unreasonable, and not credible. Appraiser Herbig used a rate of 50% of the fee simple value. However, because the physical area cannot be used to support building improvements and plantings such as deep rooted trees, a higher rate of 60% was found by the Commission to be the appropriate figure. This determination took into account all of the possible uses that "light industrial" zoning can support and found that the limitations and restrictions (as well as the necessary approvals required by Rockies) imposed by the pipeline would cause a significant loss in value.

    Multiplying 1.59 acres x $36,000 per acre x 60% indicates a compensation amount of $34,344.00.

B.  The Commission finds that the value of the Temporary Work Space and Additional Work Space, being collectively 3.26 acres, is Twenty Eight Thousand One Hundred Sixty Six and 40/100 Dollars ($28,166.40).  Appraiser Herbig testified that an annual rate of return of 10% is applicable for the temporary work easements.  Appraiser Gardner testified that an annual rate of 15% is appropriate.  The Commission finds a reasonable rate of return of 12% is appropriate for calculating compensation and is supported by the evidence.  One Commissioner felt that this figure was perhaps overcompensatory, given likely rates of return, but agreed with his fellow Commissioners that a 12% figure was supported by the evidence and concurred in the finding. The Temporary Work Space and Additional Work Space Easements are calculated as follows:  3.26 acres x $36,000 per acre x 12% x 24 months = $28,166.40.

C.  The Commission finds that the value of the Temporary Access Road is Two Thousand Three Hundred Forty Dollars ($2,340.00).  The temporary road easement per the Herbig Report contains 0.13 acres.  The size of the easement was not challenged by Defendant and is used for purposes of this Report.  The Commission finds that a rate of 25% is appropriate and is supported by the evidence. The Commission finds that the rate of return for the road is substantial due to the intended road use of the area.  The Temporary Access Road Easement is calculated as follows: 0.13 acres x $36,000 per acre x 25% for 2 years = $2,340.

D.  The total compensation due for items 3(A)(B) and (C) is Sixty Four Thousand Eight Hundred Fifty and 40/100 Dollars ($64,850.40).

**FINDING #5: Damages to the Residue.**  The Commission finds that the reduction in land value to the areas lying outside the permanent non-exclusive easement area ("the residue") is $57,754.80.

This represents a finding of a stigma to the property of two percent (2%), or a compensable loss of value to the property of Fifty Seven Thousand Seven Hundred Fifty Four and 80/100 Dollars ($57,754.80).

Although Mr. Hine was a credible witness, the Commission does not believe there is a significant change in value to the residue of the property due to the REX pipeline.  The McKinley property already has very significant encumbrances – easements for HVTL, overhead power lines and underground pipelines for propane and petroleum transmissions.  Additionally, the land is proximate to other industrial/commercial uses, especially a large propane production plant located directly across Todhunter Road from the McKinley property.  Both parties agree that the existing structures do not contribute any value as a light industrial use will result in the demolition of the structures.  Further, Mr. Hine acknowledged that he had not taken PIR into account in his prior development experience and was not even aware of the term prior to the litigation.  Although he attempted to distinguish the Rockies pipeline from other natural gas pipelines in this regard, the Commission found his reasoning unconvincing.

Moreover, the Commission also found the testimony of Mr. Smyjunas to be credible and persuasive.  Mr. Smyjunas is the purchaser and developer of the I-75 Corridor property, and he indicated that the property was encumbered with three natural gas line easements measuring 26", 26" and 36" respectively at the time of purchase.  According to Mr. Smyjunas, the property was purchased and is being developed with industrial distribution warehouses without a reduction for stigma.  Although the Rockies Pipeline is 42" in diameter, larger than any of the natural gas pipelines on the I-75 Corridor property, the Commission found that the difference between a 36" natural gas pipeline (especially one accompanied by two other natural gas pipelines) and a 42" pipeline would not greatly increase the "stigma" attached to a property (particularly given the relatively subjective nature of "stigma").

The Commission found the testimony of Eric Gardner to be unconvincing on the issue of stigma. Mr. Gardner testified that the stigma on the property would be so great as to render the property not developable as light industrial property. He concluded that the area located within the PIR and High Consequence Area caused a reduction in the highest and best use of the McKinley property to agricultural, thus creating a significant diminution in value. His opinion, however, was largely based upon unreliable surveys and was devoid of actual market data. Moreover, as previously stated, the Commission found Mr. Gardner's testimony to be sometimes evasive and unresponsive.

David Oakes testified for Plaintiff. His testimony was not given significant weight by the Commission as he admittedly has limited experience in the design of industrial land properties.

Appraiser Mr. James Herbig testified for Plaintiff and concluded that there is no reduction in value as a result of the pipeline easement. There is no appraisal analysis contained within his appraisal report and Mr. Herbig testified that he relied upon residential analyses and his examination of industrial properties encumbered by gas lines including the I-75 Corridor property. Although Mr. Herbig's testimony was otherwise credible, the Commission finds that his opinion that there is no reduction in value due to the Rockies pipeline is not sufficiently supported by the evidence and is rejected. Contrary to Mr. Herbig's testimony, the Commission finds that the presence of the REX pipeline has a "stigma" impact, although the Commission believes it is small.

Common sense and the available evidence at the hearing suggest that any stigma for such an industrial site is much less than that for a residential site. Moreover, Defendant provided little evidence as to the reduction in value due to stigma if the land could be developed as light industrial. Nonetheless, it is the finding of the Commission that the presence or addition of the REX pipeline does create a perception of additional risk, albeit small, and justifies our finding of a two percent (2%) devaluation. Multiplying $36,000 per acre by 2% indicates a reduction in value for the areas lying outside the permanent easement of $720 per acre. Multiplying the land area located outside the permanent easement of 80.215 acres (81.805 acres less 1.59 acre easement area) by $720 per acre indicates a market value reduction of $57,754.80.

**FINDING #6: Additional Land Development Costs (Damages).** The Commission awards the sum of One Hundred Twenty Thousand Dollars ($120,000.00), to compensate for probable additional development expense due to the Rockies pipeline.

The Commission believes that the presence of the pipeline has a reasonable likelihood of increasing the costs associated with development of the site, and this conclusion is consistent with the ruling of *Chesapeake & H. Ry. Co v. Snyder*, 38 Ohio App. 279 (4th Dist. 1931). Consequently, the Commission awards the sum of One Hundred Twenty Thousand Dollars ($120,000.00), the cost of a sewer lift/pump station.[1] Although there was contradictory testimony on the necessity for such a station and whether the existing easements already mandate the station if the property is developed, the Commission determined that a preponderance of the evidence establishes that there is a greater than 50% likelihood that the Rockies pipeline will require the construction of a sewer pump/lift station. In this regard, Mr. Koeninger's testimony was credible and helpful to the Commission. Although testimony varied as to the cost, we believe the sum awarded is appropriate. The sum is based on credible testimony provided by Koeninger as to the cost of the pump/lift station, which was largely unrebutted by Plaintiff. The Commission finds that it is more probable than not that any purchaser/developer would factor such cost into its offer to purchase the McKinley tract and therefore it is considered a compensable loss.

Conversely, there was not sufficient credible evidence to conclude that any developer would absorb additional costs to install such things as reinforced concrete walls in any structure on the site. There was no evidence that government regulations require such reinforcement or that they are routinely used in structures abutting natural gas pipelines. In fact, there was considerable admitted evidence that residences (which obviously do not include such reinforcement) are constructed on property with the same or greater proximity to natural gas pipelines as the McKinley property.

---

[1] The Commission declines to extend the holding of the *Chesapeake* case to the extent argued by Defendant in her memorandum presented at trial. The Commission does not believe that the *Chesapeake* case mandates that it *assume* that a sewer lift/pump station will be required in this case and that the award of the cost of such a station is therefore mandated. Instead, as stated in the text, the Commission has determined that Defendant has shown a sufficient likelihood that such a station will be required for development to justify the award of its cost. Nonetheless, the Commission notes that its decision is consistent with the holding in the *Chesapeake* case.

Therefore, the Commission hereby awards compensation to Defendant Florence McKinley in a total amount of Two Hundred Forty Two Thousand Six Hundred Five Thousand and 20/100 Dollars ($242,605.20) broken down as follows:

| | |
|---|---|
| Permanent Non-Exclusive Easement: | $ 34,344.00 |
| Temporary and Additional Workspace Easements: | $ 28,166.40 |
| Temporary Access Road: | $  2,340.00 |
| Land Damages (Stigma): | $ 57,754.80 |
| Additional Land Development Costs (Damages): | <u>$120,000.00</u> |
| Total Compensation Due Owner: | $242,605.20 |

The recommendation is in all respects unanimous.

**IT IS SO RECOMMENDED.**


/s/Gregory M. Travalio
Gregory M. Travalio, Chairman


/s/G. Franklin Hinkle, II
G. Franklin Hinkle, II, Commissioner


/s/Wesley K. Untied
Wesley K. Untied, Commissioner