**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


ROCKIES EXPRESS PIPELINE, LLC,

               **Plaintiff,**                       **Case No. 2:08-cv-554**
                                                    **JUDGE GREGORY L. FROST**
       **v.**                                  **Magistrate Judge Terence P. Kemp**

4.895 ACRES OF LAND, MORE OR LESS,
IN BUTLER COUNTY, OHIO
(PIPELINE RIGHT-OF-WAY SERVITUDE), et al.,

               **Defendants.**


**OPINION AND ORDER**

       This matter is before the Court for consideration of the Report and Recommendation of the Commission regarding the McCarty property.  (Doc. # 895.)  Also before this Court are objections (Docs. # 898, 911) filed by Defendants, Jeffrey and Maureen McCarty, a memorandum in opposition (Doc. # 912) filed by Plaintiff, Rockies Express Pipeline, LLC ("REX"), and a notice of supplemental exhibits (Doc. # 914) filed by Defendants.[1]  For the reasons that follow, this Court finds the Objections not well taken, overrules the objections, and adopts the Report and Recommendation of the Commission.

       In the September 13, 2010 Report and Recommendation, the Commission recommended

---

     [1]  The notice of supplemental exhibits simply offers transcript excerpts that REX failed to submit as attachments to its memorandum in opposition.  Although REX should have filed the transcript pages with its memorandum in opposition and, having failed to do so, should have then sought leave to supplement that document rather than adding to its briefing via a "notice," the sloppy procedure is of no importance given Defendants' failure to object and, more importantly, the transcripts filed on the docket.

that REX compensate Defendants in the amount of $116,811.10.  This recommendation was the result of a unanimous decision reached by Commission Chairperson Gregory M. Travalio, Commissioner James Trifelos, and Commissioner G. Franklin Hinkle, II (Doc. # 895, at 12.)  Defendants subsequently objected to the Commission decision on three basic grounds, each of which this Court will address in turn.

As a preliminary matter, however, this Court must first comment on the nature of the relief Defendants have requested.  Under Federal Rule of Civil Procedure 53(f)(1), made relevant to these proceedings by Rule 71.1(h)(2)(D), this Court can act on the Report and Recommendation by receiving evidence, adopting or affirming the Commissioner's decision, modifying the decision, rejecting the decision in whole or in part, reversing the decision, or (as was previously done here) resubmitting the matter to the Commissioners with instructions.  Defendants do not ask this Court to engage in most of these possible actions.  Rather, Defendants specifically confine their requested relief to asking this Court to order a new hearing before a new panel of commissioners, this Court, or a jury.  *See* Doc. # 911, at 9 ("[T]he *only* relief under the circumstances fair and equitable to the defendant would be an opportunity to present the evidence again to a new tribunal, be it a new panel of Commissioners, the Court, or a jury." (Emphasis added)).   The Court is not bound by the relief requested by an objecting party, but only notes the framework in which Defendants have elected to present their objections because it contrasts with a curious litigation choice REX has made.

REX argues in its memorandum in opposition that the 7% residue damage award recommended by the Commission is without foundation and suggests in its briefing that "this Court should reduce the recommended award by the 7% residue damages."  (Doc. # 912, at 2.)

Such a request is a backdoor attack on the residue award that falls outside the scope of a response to the other side's objections.  Defendants pursue limited relief via a timely objection. REX, however, pursues relief by treating the objection process as presenting opportunities for relief not bound by the timing and sequencing rules that govern the objections process.

Both sides had the same period in which to file objections.  Defendants took advantage of the opportunity and filed their objections, while REX failed to file objections to the Report and Recommendation.  By later seeking not to simply defend but to boldly invalidate a portion of the recommended award of compensation in its memorandum in opposition briefing, REX is attempting to resurrect an objection that it had forfeited when it failed to file timely objections. But no party can wait until responsive briefing to raise for the first time what is essentially an objection, deprive the other side of any opportunity to respond (given that there is no reply memoranda permitted without leave of court), and then seek relief on the bootstrapped objection. Such an attempted end-run around the Civil Rules and the procedures ordered by this Court fails to present an objection that the Court will consider.

Therefore, to the extent that REX actually believed that it could successfully *belatedly* request that this Court delete the recommended residue damages based on REX's argument that "there was really no admissible evidence, and certainly no persuasive evidence, of damages to the residue," the Court strikes the request as an impermissible untimely objection.  The Court will thus begin with the premise that the 7% residue award stands unless the grounds on which Defendants seek to overturn the award prove persuasive under *de novo* review.

Defendants' threshold objection is to the Commission's mere consideration of the parties' dispute.  Previously, this Court considered a Commission Report and Recommendation

by a panel of commissioners that included Commissioner Craig B. Paynter. (Doc. # 831.) As a result of objections to Paynter's participation in that earlier Report and Recommendation–but based on more narrow grounds than Defendants had argued–this Court filed a July 30, 2010 Opinion and Order in which the Court remanded the issue of Defendants' compensation back to the Commission with instructions that an alternate commissioner would replace Paynter on Defendants' panel, that the new panel would conduct new deliberations unbound by what had transpired in the prior Report and Recommendation, and that the new panel deliberations would result in a new Report and Recommendation that may or may not track the prior Commission recommendations. (Doc. # 875, at 9-10.)

As REX notes, other landowners in this lawsuit have unsuccessfully argued to this Court that Paynter's presence during their hearings and the deliberations that produced their first Reports and Recommendations inescapably corrupted the Commission so that the remaining Commissioners could never produce a fair result, even after new deliberations producing new Reports and Recommendations. The premise behind this residual taint argument is that the Commissioners are incapable of functioning like jurors who are sent back into a jury room to conduct new deliberations after an alternate juror has replaced a individual who is no longer part of the jury. Courts nationwide have endorsed such a process, crediting even layperson jurors with the ability to follow instructions and engage in new deliberations without regard for any prior deliberations. Such a routine procedure has been employed with appellate approval even in death penalty criminal cases. It confounds this Court why Defendants and various other landowners nevertheless reject such similar action here on the grounds that the Commissioners, all of whom are not even laypersons but are attorneys, cannot understand such obligations and

4

cannot function at such a rudimentary level.

There is no evidence here of residual taint, inadvertent subliminal brainwashing, or the groupthink that Defendants' first objection suggests.  In an effort to present such evidence, Defendants point to the fact that the Commission's September 13, 2010 Report and Recommendation (Doc. # 895) is often identical to the of-no-effect May 19, 2010 Report and Recommendation (Doc. # 831).  Two points need be made.

First, given that two of the same Commissioners sat on both panels, it is reasonable that their individual opinions generally remained consistent as a matter of logic and not as a result of helplessness before the purported continuing influence of Paynter.  The fact that a third Commissioner was added to the mix and contributed to new deliberations may or may not have changed these Commissioners views and the expression of these views.  In some instances, it did not, while in other instances, minor to more substantial changes occurred.  For example, the recommended amount for the permanent non-exclusive easement increased, which in turn increased the overall award.

Second, there is no support for the inference that the fact that the panel responsible for the September 13, 2010 Report and Recommendation employed text from the earlier recommendations means that the second panel ignored this Court's instructions and went rogue. The expression of opinions that remained consistent in the same way as a prior expression of that opinion does not invariably indicate a failure to deliberate anew.  When this Court or any other judicial officer employees boilerplate or otherwise quotes from prior work, it is a writing device that aids in the production of timely decisions.  It is not the indication of an abdication of deliberative responsibility that Defendants suggest.  The September 13, 2010 Report and

Recommendation understandably tracks at times the prior panel's work product, and Defendants have not persuaded this Court that the similarities prove residual taint.  If anything, the similarities when stacked against the differences indicate new deliberations and consistent approaches if not always conclusions by the common members of the panels.

Adopting and incorporating by reference its prior discussions regarding the residual taint argument, *see* Docs. # 875, 880, and 894, the Court therefore overrules Defendants' first objection.

In their next objection, Defendants argue that the Commissioners erred in denying compensation to improvements on the property.  Presenting a manifest weight argument, Defendants asserts that the Commissioners failed to credit Defendants' own testimony regarding the value of the improvements.  Defendants' emphasis on their credentials and the purported failure of the Commissioners to give weight to their testimony misses a key point, however.  As REX correctly points out in its memorandum in opposition, the Commissioners properly rejected as dispositive Defendants' improvements-related testimony because of the distinction between the market value of the improvements and the cost to construct the improvements.

Comparison of the Report and Recommendation with the relevant portions of the hearing transcript indicates that Defendants' testimony often targeted the cost to construct the improvements.  This cost is not necessarily the same number as any added market value that the improvements lend to the property.  An improvement that costs a certain amount to build may effectuate a lesser value enhancement to the property in the market (especially given the falling property values that have characterized many if not most real estate markets these past years). Defendants' testimony did not establish a credible link between construction costs and the

realized effects on market value, including any depreciation considerations, which leads to the consequence that much of their testimony regarding improvements was ultimately of little to no value to the Commissioners who were tasked with ascertaining whether the pipeline created any loss in market value.

For example, Maureen McCarty opined that the timber frame barn is valued at $15,000 and that a replacement would cost more than that figure. Her testimony regarding improvements such as the pool, retaining wall, and patio set forth estimates of what Defendants had paid for the improvements and not what the amount of the property value the improvements generated. Although Maureen McCarty rejected the notion that there is a difference here between construction costs and market value, the Commissioners did not have to accept this general and essentially unsupported opinion. Similarly, this Court need not accept the opinion. Data supporting such a self-serving contention would have been of considerable value to Defendants' case and would have likely carried considerable more weight than what amounts to each defendant's "trust me, I'm in the industry" generalizations.

Given the nature of such testimony, it does not necessarily prove conclusive whether (as Defendants now argue) REX failed to rebut much of this testimony. The Court recognizes that REX's expert, James Herbig, did in fact testify that there was no diminution in the value of the improvements, citing in part reliance on sales data. But even without Herbig's opinion, testimony that is inherently of little value does not invariably carry the day when weighed against credibility, common sense, and logic, as well as permissible research conducted by the Commissioners. Given this truism, Defendants' argument that the Court should credit their testimony in large part because they have been successful in the real estate and construction

7

fields carries little persuasive value.  Neither the Commission nor this Court should assign weight or ascertain credibility based upon the perceived bank accounts or accumulated possessions of any witness.

In light of the actual evidence presented, Defendants' credentials are therefore largely a side issue, and the Commissioners' handling of Defendants' improvements testimony accorded this testimony proper limited weight.  This Court reaches the same conclusion that the Commissioners did in regard to the improvements: there is no sound evidentiary basis for crediting the construction costs as the market value.  The Court overrules the second objection.

Defendants argue in their last objection that the Commissioners erred in failing to credit sufficiently the testimony of their expert, Kurt Kielisch, in regard to damages to the residue. Defendants explain that they "do not suggest that the opinion testimony of Kurt Kielisch should be accepted as gospel truth," but take the position that comparing his testimony with the testimony of REX's expert, James Herbig, "should lead the unbiased trier-of-fact to the conclusion that [Kielisch's] testimony was substantially more credible."  (Doc. # 911, at 8.) Oddly, Defendants fail to direct this Court to any specific portions of Kielisch's substantive testimony and instead focus on purported deficiencies in Herbig's testimony.

REX argues that the Commissioners correctly considered Kielisch's testimony in light of the fact that he failed to perform appraisals.  The company also argues that Herbig's testimony addressed the issue of improvements (as referenced above), relied upon sales data, and addressed residue damages in a manner that should in fact invalidate that portion of the Commissioner's recommended damages award.

Review of the evidence fails to support Defendants' position.  As REX notes in its

briefing, Kielisch's testimony at best severely undercuts the amount of damage to the residue Defendants asserted in their own testimony.  Critical examination of Kielisch's testimony erodes much of the support for the more limited damage to the residue that he opines exists.  The surveys upon which Kielisch relied provide dubious support for his testimony given that the survey property and the property here are distinguishable in terms of whether other pipelines are involved, lot size, and placement of the pipeline.

Nonetheless assigning the data some weight, this Court notes that the Commissioner's recommendation falls within the percentage range of residue damage contemplated by a majority of those assigning such damages in one survey while tracking the residue damages contemplated in the not-exactly-on-point Riverside Estate analysis.  Other data fails to present fair comparable properties, in contrast to Herbig's more closely aligned properties that better informed the necessary analysis.  Although both experts could have undertook more complete approaches, the efforts of Herbig present more credible results supporting opinions that outweighed those offered by Kielisch.

In summation, there is some support in the evidence for the Commissioner's recommendation–enough to sustain the recommendation even without REX's forfeiture–and there is ample support for declining to credit much if not most of Kielisch's testimony.  As noted, however, REX failed to contest via timely objection the residue damages recommended by the Commissioners and cannot now attempt to decrease the award by means of an end run around its forfeiture.  *De novo* review encompasses a fresh review of the specific purported error raised by a correspondingly specific objection; it does not equal a license to sandbag. Accordingly, although there may arguably be some basis to question the residue damage

recommendation, there is no basis to invalidate or increase the award in Defendants' favor.  This Court also overrules the third objection.

For the foregoing reasons, the Court **OVERRULES** Defendants' objections (Docs. # 898, 911) and **ADOPTS AND AFFIRMS** the September 13, 2010 Report and Recommendation of the Commission regarding the McCarty property (Doc. # 895).  It is therefore the Order of this Court that a judgment is entered in favor of Defendants Jeffrey and Maureen McCarty and against Rockies Express Pipeline, LLC in the amount of $116,811.10.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

          /s/ Gregory L. Frost          
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

10