UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROCKIES EXPRESS PIPELINE, LLC,**

       **Plaintiff,**                             Case No. 2:08-cv-554
                                                              JUDGE GREGORY L. FROST
       **v.**                                               Magistrate Judge Terence P. Kemp

**4.895 ACRES OF LAND, MORE OR LESS,
IN BUTLER COUNTY, OHIO
(PIPELINE RIGHT-OF-WAY SERVITUDE), et al.,**

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court for *de novo* consideration of the Report and Recommendation of the Commission regarding the McKinley property. (ECF No. 915.) Also before this Court are objections (ECF Nos. 921, 935) filed by Defendant, Florence McKinley, and a memorandum in opposition (ECF No. 947) filed by Plaintiff, Rockies Express Pipeline, LLC ("REX").[1] For the reasons that follow, this Court finds the objections not well taken, overrules the objections, and adopts the Report and Recommendation of the Commission.

In the November 3, 2010 Report and Recommendation, the Commission recommended that REX compensate Defendant in the amount of $242,605.20. This recommendation was the result of a unanimous decision reached by Commission Chairperson Gregory M. Travalio, Commissioner G. Franklin Hinkle, II, and Commissioner Wesley K. Untied. (ECF No. 915, at

---

[1] All pinpoint references to documents filed on the electronic docket shall be to the original page numbers of the document involved, not to the page number assigned by the electronic filing system.

1

11.) Defendant subsequently objected to the Commission decision on multiple grounds, each of which this Court will address in turn.

In arriving at its damages recommendation, the Commission concluded that land damages, or damages to the residue, amounted to $57,754.80. Defendant foremost objects to this determination on the grounds that the Commission essentially ignored the pertinent testimony of her expert, developer Douglas J. Hine, as well as a market study that Hine conducted. Hine testified that he spoke with 34 individuals connected to the marketplace in which the subject property exists, including developers, lenders, potential tenants, real estate brokers, a title insurer, other individuals involved in the insurance industry, and design professionals.[2] Summarizing the aggregate opinions offered by these individuals, Hine testified that the presence of the 42-inch pipeline involved in the REX project would notably harm the residue value with a loss of value of 46% to 67%. Defendant argues that the Commission erred by discounting Hine's conclusions based on the fact that he was not aware prior to this case of the Potential Impact Radius ("PIR") approach and had never employed such analysis previously.[3]

REX of course disagrees with Defendant and labels the PIR approach as "unproven" and "novel." (ECF No. 947, at 1.) The company raises concerns over the unscientific and

---

[2] Defendant argues that Commission Chairperson Travalio erred in limiting testimony by Hine and another witness, Eric J. Gardner. This Court concludes that Travalio properly limited such testimony consistent with Federal Rule of Evidence 703. The results and summaries Defendant targets as excluded would have only provided cumulative testimony to the testimony of Hine and Gardner, testimony that the men were permitted to explain as consistent with the groups of survey participants. The probative value of the excluded and essentially redundant hearsay evidence and questions does not outweigh their prejudicial effect.

[3] The PIR approach looks at the area within which the potential failure of a pipeline would yield a significant negative impact.

purportedly biased survey Hine conducted, noting that Hine failed to ask the survey subjects whether they had experience developing around natural gas pipelines or whether they had encountered the PIR concept before this case. This latter point is especially significant and underscores that Defendant's characterization of the Commission's analysis is problematic. The Commission did not adopt a position that it was unwilling to entertain the PIR concept; rather, the Commission reasonably rejected the PIR analysis because the preponderance of the evidence undercut its application under the facts presented.

As the Commission explained, no developer witnesses testified that they had considered the PIR in deciding whether to develop light industrial property and none cited a case in which the PIR had played such a factor. The Commission specifically noted that Hine conceded that he had never taken the PIR into account in such development and rejected his attempts to explain why he would treat the subject property differently as "unconvincing." (ECF No. 915, at 3.) Equally problematic for Defendant is Hine's reliance on Mark Koeninger's troubled calculations that, apart from any fundamental weakness related to the formula the witness employed, failed to parse out any PIR for the REX pipeline from overlapping PIR's related to other pipelines. The ability of survey participants to assess any additional impact of a REX PIR is hindered by those individuals' lack of awareness of the scope of the asserted REX PIR alone. This leaves the PIR approach an interesting theory that lacks persuasive force under the circumstances of this case.

Defendant nonetheless asks this Court to credit the PIR approach, but like the Commission, this Court finds an insufficient factual basis warranting application of this theoretical concept as opposed to valuing what the evidence more concretely presents that developers actually care about in making light industrial development decisions. In other words,

the Court agrees with the Commission's consideration of the evidence and ultimate rejection of the PIR approach advocated by Defendant, and Defendant's post-Report and Recommendation spin on the evidence does not suffice to replace a dearth of evidentiary support for the PIR approach presented.

Rather, again like the Commission, the Court recognizes that the testimony of Robert Smyjunas more properly informs the residue issue. Smyjunas developed the property designated in the Report and Recommendation as the I-75 Corridor property, which included several natural gas pipelines, including a 36-inch pipeline. Defendant argues that the Commission erred in relying on Smyjunas' testimony as support for the conclusion that the REX pipeline did not further damage the residue beyond that embodied in the recommended residue award. Attempting to paint Smyjunas as at best uninformed and at worst a biased witness motivated by his own financial self-interest, Defendant rejects comparison of her property to the I-75 Corridor property as "meaningless and not based on evidence." (ECF No. 935, at 15.)

This Court is cognizant, apparently perhaps more than the Commission, that the Smyjunas testimony is of notably measured quality in regard to Defendant's property. Even taking into account the less than perfect fit between the circumstances underlying each property, however, the Court is left with a survey by Hine that proves to be of little to no actual value and testimony by individuals such as Smyjunas that better informs the residue issue. Defendant simply disagrees with the weight to be afforded the evidence, but Defendant's arguments as to how to credit particular evidence are simply unpersuasive.[4]

---

[4] Equally non-dispositive is Defendant's discussion of the testimony of REX appraiser James Herbig. In her objections, Defendant summarizes what she contends are the key points of this witness's testimony, but even Herbig's conclusions that individuals of the sort involved in

Defendant adopts a similar approach in targeting the testimony of developer David Oakes.  Defendant faults Oakes for failing to conduct interviews to support his conclusions, but in rejecting Oakes' opinions, Defendant relies on Hine's opinion, which Defendant describes as "backed up and supported by an extensive marketplace investigation."  (ECF No. 935, at 17.)  This incorrectly laudatory characterization of the purported basis for Hine's conclusions again fails to acknowledge the fundamental deficiencies plaguing the inherently unscientific and insufficiently on-point methodology and questions Hine employed.

Such problems with the Hine survey and related testimony taint the core of Defendant's objections.  Defendant's overarching premise in most of her arguments is that Hine's conclusions and the survey upon which he professed to rely are superior evidence that defeat the evidence Defendant seeks to pick apart in nearly all of her points.  But the unreliability of the survey and its residual taint on the testimony of Hine leaves Defendant with little to defeat the evidence she attacks.  Placing the survey in its proper perspective removes the prism that Defendant urges this Court to use in viewing the evidence under assault by Defendant.  The end result is the collapse of Defendant's major premise and the consequent nullification of most of her objection arguments.

This problem informs Defendant's discussion of the testimony of architect and consultant Mark D. Koeninger.  Defendant argues that REX failed to overcome Koeninger's PIR testimony and that the Commission did not factor into their residue analysis the contention that over one-half of the subject property purportedly falls within the PIR of the REX pipeline.  Similarly,

---

the Hine survey are relevant and that a market study would be relevant does not serve to render the actual Hine survey more credible or reliable.  The testimony on this point simply suggests that a *better* survey of these sort of individuals might indeed have utility.

Defendant then argues that the Commission failed to credit sufficiently the testimony of appraiser Eric J. Gardner, who also prepared a market study. Gardner interviewed roughly a dozen-and-a-half individuals involved in the market. The Commission found, however, that Gardner's testimony "lacked credibility" and "was unconvincing on [the residue] issue." (ECF No. 915, at 4.) Explaining these conclusions, the Commission noted that Gardner relied on unscientific surveys and that his opinion lacked supportable market evidence. Gardner was also curiously unaware that the I-75 Corridor property used in his report contained a 36-inch pipeline despite the fact that his own company represented Smyjunas in the purchase. Of perhaps even more significance is the fact that the Commission, which was in the best position to observe and evaluate Gardner as a witness, found that he was "sometimes evasive and argumentative" and that his "testimony lacked credibility and was therefore substantially discounted." (ECF No. 915, at 4.) Accordingly, the Commission "found the testimony of Eric Gardner to be unconvincing on the issue of stigma." (ECF No. 915, at 9.)

  Review of the proceedings leads this Court to agree with the foregoing conclusions. The Commission weighed credible, conflicting evidence on each side of the issue and justly concluded that REX had prevailed by a preponderance of the evidence. The evidence does not weigh in favor of finding that the already encumbered subject property sustained a significant negative change in value, particularly in light of how the imperfectly analogous but nonetheless helpful I-75 Corridor property and its multiple pipelines informed the stigma issue.

  A far less complicated question is presented by Defendant's argument regarding the testimony of Craig Elliott, an individual who lives near the pipeline and a substation. Elliott testified on behalf of Defendant that, while sitting on his porch in November 2009, he heard a

jet-like sound for two hours, that there had been a pipeline incident in Philo, Ohio, and that he believed his home sustained a consequent diminution of value.  Defendant appears to offer Elliott's testimony in her objections as just another example of evidence purportedly outweighing REX's evidence.  Given the collapse of Defendant's overarching premise underlying her core objections, the nuances of any ancillary objections and reliance on such relatively unhelpful if not largely irrelevant testimony can do little to inform the Court's consideration of the damages awarded.  Elliott's testimony speaks to some stigma, and the Commission awarded some stigma damages even if, as discussed below, the award might arguably have been in fact too high.

In summary, the preponderance of the evidence supports the Commission's residue recommendation.  Defendant has presented a litany of essentially related objections that again and again return to the core premise that the Commission erred in crediting more of REX's testimony than her own evidence.  Defendant in fact presents a chart or table in her briefing in which she attempts to demonstrate the presence of more evidence on her side of the issue.  But it is the weight and not the sheer amount of proffered evidence that proves determinative.  Moreover, Defendant's premise relies on surveys and witnesses that failed to present sufficient cause for crediting their conclusions.  In the absence of the PIR approach and a conclusion that light industrial use is inappropriate, Defendant is left with little persuasive evidence informing stigma damages for the subject property.

The Commission refused to accept the Herbig contention that there was no diminution in value, however, and proceeded to find a 2% devaluation.  At best, there is simply little evidence to support this specific award over a lesser damages award–and there is wholly insufficient

7

evidence to warrant the minimum 25% award that Defendants suggests.  The Court is concerned with any approach in which a nominal residue award would default to a 2% devaluation whenever stigma exists.[5]  Despite this concern over how the Commission arrived at the percentage involved and in light of the record (and the fact that REX did not object to the 2% amount but instead asks that it be upheld), this Court does not conclude that the Commission erred to Defendant's detriment in awarding the residue damages it did.

For the foregoing reasons, the Court therefore **OVERRULES** Defendant's objections (ECF Nos. 921, 935) and **ADOPTS AND AFFIRMS** the November 11, 2010 Report and Recommendation of the Commission regarding the McKinley property (ECF No. 915).  It is the Order of this Court that a judgment is entered in favor of Defendant McKinley and against Rockies Express Pipeline, LLC in the amount of $242,605.20.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

           /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[5] The Court is even more concerned with Defendant's attempt to argue that the 2% devaluation should be greater by citing the 7% and 8% devaluations the Commission found in regard to other properties.  The circumstances of each taking are of course different and demand individualized consideration.  Defendant's comparison is therefore wholly irrelevant to the property *sub judice*.