## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ROCKIES EXPRESS PIPELINE, LLC,

        Plaintiff,                      **Case No. 2:08-cv-554**
                                           **JUDGE GREGORY L. FROST**
      **v.**                        **Magistrate Judge Terence P. Kemp**

4.895 ACRES OF LAND, MORE OR LESS,
IN BUTLER COUNTY, OHIO
(PIPELINE RIGHT-OF-WAY SERVITUDE), et al.,

        Defendants.

### OPINION AND ORDER

This matter is before the Court for *de novo* consideration of the Report and Recommendation of the Commission regarding the Alexander property. (ECF No. 925.) Also before this Court are objections (ECF Nos. 942, 960) filed by Defendant, Anna Alexander, and a memorandum in opposition (ECF No. 965) filed by Plaintiff, Rockies Express Pipeline, LLC ("REX").[1] For the reasons that follow, this Court finds the objections not well taken, overrules the objections, and adopts the Report and Recommendation of the Commission.

In the December 1, 2010 Report and Recommendation, the Commission recommended that REX compensate Defendant in the amount of $136,121.70. This recommendation was the result of a unanimous decision reached by Commission Chairperson Gregory M. Travalio, Commissioner Wesley K. Untied, and Commissioner G. Franklin Hinkle, II. (ECF No. 925, at

---

[1] All pinpoint references to documents filed on the electronic docket shall be to the original page numbers of the documents involved, not to the page numbers assigned by the electronic filing system.

13.)  Defendant subsequently raised four objections to the Commission decision, each of which this Court will address in turn.

Defendant again raises in her first objection the argument that Commissioner Craig Paynter's membership on the Commission presents either a conflict of interest or the appearance of a conflict of interest that creates residual taint precluding the Commission members who actually presided over her hearing from being fair and impartial.  This Court has already disposed of this argument a number of times in this case and adopts and incorporates by reference the prior discussions on this issue.  (ECF Nos. 875, 880, 894, 945.)  Accordingly, the Court overrules the first objection.

In her second objection, Defendant raises the argument that the Commission's finding that the highest and best use of the property is to hold for future residential development is against the manifest weight of the evidence.  Defendant does not dispute the Commission's finding that this was the highest and best use of the property prior to the REX pipeline project. What Defendant takes issue with is the Commission's conclusion that this remains the highest and best use when witnesses Jerry Fletcher and Michael Schueler testified that the post-pipeline highest and best use is agricultural.  The Court recognizes Fletcher's testimony as assisting Defendant's argument, but finds that Schueler's testimony is of notably less support in this regard.  Schueler's failure to consider factors informing potential residential development undercuts the utility of his opinions.  Finally, the Court recognizes that the testimony of David Reibold supports residential development in some respects while offering the conclusion that in that witness' opinion, the REX pipeline renders the property undesirable to builders and thus essentially not for development, even if development could occur without reaping the desired

profits.

REX offered into evidence the testimony of David Oakes. Oakes analyzed Defendant's property for residential development. Pointing to a number of factors, including the lack of access to a sewer system, Oakes opined that Defendant's property was not economically viable for residential development at the time of the take. Another REX witness, Jim Herbig, testified that the highest and best use of the property was to hold for eventual residential development. Herbig opined that the pipeline had no negative effect on either this use or the value of the property. This Court will discuss the latter point below; it is the first point that is relevant to this second objection.

This Court's review of the hearing transcripts leads the Court to agree with the Commission. The Court is skeptical of Herbig's no-loss-of-value opinion, but sufficiently credits his testimony regarding individual lot sales in other developments serving as evidence that development of comparable property occurred. Qualifying the weight this Court assigns to that testimony is Herbig's surprising failure to consider pipeline size in his analysis. What proves significant, however, is that the presence of pipelines does not preclude the hold for residential finding. Lots with pipelines and lots without pipelines presented lots for development; the REX pipeline does not prevent such similar development.

Also of note is that portions of Defendant's already encumbered property have been developed. Again, this Court recognizes that there is concern regrading the existing pipelines and the REX pipeline, but there is an insufficient basis here to find the differences sufficiently distinguishable so as to alter the highest and best use. The Columbia Gas easement discussed in the testimony is informative and mitigates the comparative REX easement. In other words,

although this Court disagrees with REX that the issue is as clear as the company asserts, the Court still agrees with the ultimate outcome of the Commission regarding the highest and best use of Defendant's property. The Court consequently overrules the second objection.

Defendant attacks in her third objection the Commission's decision to award a 7% loss in land value for a residue damages award of $91,175.70. Defendant argues that because the evidence presented by REX on the issue is fundamentally flawed, Defendant's own evidence asserting a 15% loss stands uncontroverted and was improperly rejected by the Commission.

Review of the record and the Commission's Report and Recommendation has presented a troubling situation for the Court in which the technically correct disposition of the issue nonetheless potentially works unfairly against a party–a possible unfairness that the party in fact specifically asks this Court to accept. Properly setting forth this issue necessitates explaining what the Commission did and how the parties reacted.

After effectively summarizing the parties' competing testimony, the Commission analyzes the residue issue as follows:

> Keeping in mind the guidance of the cases cited previously, along with the summary testimony of Mr. Reibold, the Commission finds that the existence of the REX pipeline has caused damage to the residue of the property. The damage does not rise to the level where a change to the highest and best use results, and the damage is significantly mitigated by the fact that there are already five existing natural gas transmission pipelines on the property. However, these pipelines are smaller than the REX pipeline and affect a smaller portion of the overall property. Moreover, the REX pipeline directly bisects the property. Recognizing that the property can still be developed, the Commission nonetheless recognizes that the existence of the REX pipeline would decrease a potential developer's flexibility and possible development alternatives. In addition, the existence of an additional natural gas transmission pipeline would (marginally) add to the stigma on the residue. Therefore, the Commission found a 7% reduction in value caused by the REX pipeline. Although one of the Commissioners felt that 7% was generous to the Defendant, he was ultimately convinced by his fellow Commissioners that 7% was sufficiently supported by the evidence.

4

> The loss in land value is calculated as 78.94 acres x $1,155.00 ($16,500 x .07) per acre totaling $91,175.70.

(ECF No. 925, at 9.)  What is potentially problematic about this analysis is that, given the lack of an explanation as to what specific evidence the Commission relied upon to support its 7% award, the percentage has the appearance of nothing more than a Solomon-like attempt at estimating damages that no party has proven.  The record supports this characterization of the Commission's decision.  But what frames the residue issue in a light leading to a clean disposition is that, curiously, Defendant is the only party objecting.

REX did not file an objection to the 7% residue damages award, despite repeatedly characterizing the award in its briefing as "more than generous."  (ECF No. 965, at 4, 7, 11, 20.) What this means is that REX forfeited the right to contest the 7% award.  This forfeiture is essentially an academic point here, however, given that REX specifically asserts that "the award of 7% residue damages . . . should be affirmed."  (ECF No. 965, at 11.)  The result of REX's position, coupled with Defendant's argument that the 7% award is too low, is that the Commission's award of 7% residue damages becomes for all practical purposes the baseline figure below which this Court will not go.  In other words, because no party effectively contests that 7% is too high, the Court's inquiry becomes whether the Commission erred in selecting a figure less than anything from above 7% to a cap of 15%.  To proceed otherwise and decide whether the 7% figure is too high would ignore REX's acquiescence to the amount and provide the company with a backdoor objection mechanism that REX does and could not seek.

Proceeding from this perspective, the Court recognizes that the residue damages evidence before the Commission was hardly helpful.  As the Commission correctly noted, David Reibold

5

testified on behalf of Defendant that, assuming a finding of residential development instead of agricultural use was in fact correct, there would be a 15% reduction in the value of the property. But as the Commission also correctly found, Reibold "offered no support for this conclusion." (ECF No. 925, at 8.) Review of the hearing transcript indicates that Reibold indeed offered no explanation whatsoever for this number and in fact waffled on its wholly qualified precision.

REX offered equally unhelpful evidence. James Herbig testified that there was simply no residue damage, presenting a 0% figure to the Commission. The Commission correctly recognized, however, that Herbig based his number on the assumption that "the size of the pipeline made no difference as to whether there would be a loss in value." (ECF No. 925, at 9.) This assumption, coupled with the consequent uncertainty concerning treating the Stoneridge, Hawthorne Hills, and Dover Estates developments as containing comparables, undercuts Herbig's suggestion of no residue damages. This Court recognizes that the size of the REX pipeline thus *potentially* qualifies use of these developments as containing comparables that conclusively present no residue damage. The problem is that there is a dearth of evidence suggesting in any helpful way the impact of the 42-inch pipeline if indeed such impact exists.

This left the Commission and leaves this Court with little in the way of evidence upon which a reliable percentage of residue damage can be hung. Herbig's non-dispositive testimony might leave the door open for some residue damage, but he failed to focus on valuable factors, while Reibold's testimony suggests an apparently random number if and only if a highest and best use determination leads to the issue. How the Commission reconciled this contrasting testimony, each side of which is fundamentally flawed, to say "that 7% was sufficiently supported by the evidence" escapes this Court. (ECF No. 925, at 9.)

6

The Commission could have rejected awarding residue damages based on a failure to meet the burden of proof on the issue or perhaps more properly could have awarded only a nominal amount. Instead, the Commission (apparently after some debate) elected to award a percentage exceeding a nominal amount based on curiously ineffective testimony presented on the issue. The Court is concerned by what appears to be simply a compromise award.

On review, this Court is free to accept, modify, or reject the Commission's decision, as well as resubmitting the residue issue to the Commission in whole or in part with instructions. In light of the posture of how this issue is before the Court–one side requesting an increase and the other (paying) side requesting affirmance of the 7% award–this Court begins at the starting point of a 7% award and concludes that any increase beyond that is wholly unwarranted by the evidence. The asserted 15% residue damages is not derived from a logical understanding of the evidence–evidence that is unsupported opinion lacking a persuasive foundation–and does not present any cause for increasing a residue award that, absent REX's election to accept the 7%, would in fact necessitate reduction. The Court therefore overrules Defendant's third objection.

In her fourth and final objection, Defendant targets the Commission's handling of the voucher that Defendant contends requires REX to return the easement areas to pre-construction grade and conditions beyond obligations already present in the Agricultural Impact Mitigation Agreement ("AIMA"). The Commission was not persuaded that the voucher imposed any additional obligation concerning the removal of rocks and concluded that, even assuming *arguendo* that it did, the effect of such an obligation was tempered by the voucher's "as is practicable" language. Consequently, the Commission rejected Defendant's position and found

that REX had done all that could practicably be done at the relevant time.  It is important to recognize that the Commission specifically found that Defendant had failed to meet her burden of proving that REX had failed to do everything practicable as opposed to failing to do any possible work, such as building refuse piles.

Defendant contends that the Commission failed to credit the voucher and incorrectly concluded that REX had done all that was practicable.  She characterizes the Commission's rejection of her witnesses' testimony regarding the rocks as a cavalier dismissal based on the Commission's recognition of pre-existing relationships while faulting the Commission for not discrediting William Brantley's testimony based on his employment relationship with REX. After colorfully describing the Commission's asserted incongruity as part of that body's "stampede to find that further and proper rock removal is not 'practicable,' " Defendant also posits that the Commission penalized Defendant for the lack of a site visit when no such visit could have afforded the Commissioners a permissible evaluation of the evidence.  (ECF No. 960, at 16.)  Defendant concludes by asking this Court to award the cost of remediation for the removal of the subsoil and the rocks.

REX of course disagrees with the objection.  The company argues that the Commission properly found that Defendant could use the easement for her horses.  To support this contention, REX points to the testimony of Jim Hobstetter who explained that he had dug a hole above the pipeline and that he did not encounter the rock issues that Defendant asserts exist.  Hobstetter testified that there was thus no danger to Defendant's horses.  Although Defendant disagrees with this conclusion, REX notes, it offered no persuasive evidence outweighing Hobstetter's testimony; in fact, REX points out, Defendant's counsel characterized Hobstetter's investigation

as simply getting lucky in picking a patch of ground that did not present problematic rock conditions.

Having reviewed the transcript, this Court agrees with REX that the Commission's weighing of the evidence was neither cavalier nor erroneous. Although there is strong evidence on both sides of the issue, the evidence as a whole just supports the Commission's conclusions. As REX notes in its briefing, portions of the testimony offered by Defendant was largely unpersuasive and was at times even wholly unhelpful. For example, Dr. Stan Alexander testified that he could not identify when he had collected the rocks Defendant presented as evidence and even conceded that he might have procured this evidence while REX was still completing its work. (ECF No. 961, at 80-1.) Absent context, this physical evidence and related testimony lacks persuasive force sufficient to overcome contrary testimony. This objection, perhaps more than the rest, has presented the closest call, but given the evidence presented, the Court cannot say that the Commission erred.

Two additional if essentially more tangential points warrant mention. The first point is regarding the non-dispositive argument that the Commission's comments on the lack of a site visit are problematic. In discussing the rock issue, the Commission noted:

> The Commission did not have the benefit of a site visit. The Defendant had moved for a site visit that was granted by the Chair, but the visit was canceled over the objection of the Plaintiff upon motion of the Defendant shortly before the hearing. In retrospect, the Commission feels a site visit would have enhanced the Commissioners' ability to understand the testimony and evidence.

(ECF No. 925, at 12.) Defendant argues that the Commission "somehow" discredited the testimony of her witnesses at least in part because there was no site visit while asserting that the Commission could have itself visited the site on its own. (ECF No. 960, at 16.)

In making this argument, Defendant forces upon the Report and Recommendation a meaning that is not there.  The Commission based its conclusions on the evidence, not on the lack of a site visit.  There was no apparent penalty to Defendant for cancelling a visit, but simply the Commission expressing its belief that a site visit would have provided useful context to the evidence.  Regardless, the site visit issue is moot because this Court's *de novo* review cures any possible (although non-existent) penalty related to the visit.

The second necessary point is that, similar to the Commission, the Court also cautions REX against failing to comply with its ongoing AIMA remediation obligations.  The Court agrees with the Commission that REX has failed in non-dispositive obligations that would have lessened or even avoided conflicts between REX and Defendant.  There is no reason why REX can not and should not avoid these missteps in its ongoing business relationship with Defendant.

This Court has reviewed the evidence and finds that it is in agreement with the Commission.  Accordingly, the Court also overrules the fourth objection.

For the foregoing reasons, this Court **OVERRULES** Defendant's objections (ECF Nos. 942, 960) and **ADOPTS AND AFFIRMS** the December 1, 2010 Report and Recommendation of the Commission regarding the Alexander property (ECF No. 925).  It is the Order of this Court that a judgment is entered in favor of Defendant Alexander and against Rockies Express Pipeline, LLC in the amount of $136,121.70.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE