UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROCKIES EXPRESS PIPELINE, LLC,**

      **Plaintiff,**                          Case No. 2:08-cv-554
                                                    JUDGE GREGORY L. FROST
      **v.**                                        Magistrate Judge Terence P. Kemp

**4.895 ACRES OF LAND, MORE OR LESS,
IN BUTLER COUNTY, OHIO
(PIPELINE RIGHT-OF-WAY SERVITUDE), et al.,**

      **Defendants.**

## OPINION AND ORDER

      This matter is before the Court for consideration of the following filings:

      (1) a motion for summary judgment (ECF No. 967) filed by Rockies Express Pipeline, LLC ("REX");

      (2) a memorandum in opposition (ECF No. 984) filed by Defendants Murray Energy Corporation, Consolidated Land Company, and American Energy Corporation ("Murray");

      (3) a reply memorandum (ECF No. 991) filed by REX;

      (4) a sur-reply memorandum (ECF No. 994) filed by Murray;

      (5) a notice of supplemental authority (ECF No. 1004) filed by REX;

      (6) a supplemental memorandum (ECF No. 1007) filed by Murray; and

      (7) a supplemental deposition (ECF No. 1029) filed by Murray.[1]

Also before the Court is a motion to amend the Court instructions to the Commission (ECF No.

---

[1] All pinpoint references to documents filed on the electronic docket shall be to the original page numbers of the documents involved, not to the page numbers assigned by the electronic filing system.

1023) and a memorandum in opposition (ECF No. 1026) filed by REX. For the reasons that follow, this Court finds the motions well taken in part.

## I. Background

This Court and various appellate courts have previously set forth many of the essential facts upon which this and previously dismissed related litigation between REX and Murray are based. See *Murray Energy Corp. v. FERC* , 629 F.3d 231, 234-37 (C.A.D.C. 2011); *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 603-04 (6th Cir. 2010); ECF No. 15 in Case No. 2:09-cv-284; ECF No. 701 in Case No. 2:08-cv-554. In summary, REX is a natural gas pipeline company that has constructed with approval by the Federal Energy Regulatory Commission ("FERC") a pipeline running over land in which Murray holds mineral interests related to the coal companies' mining operations. There is no longer any dispute over whether REX can obtain the easements necessary for construction of the pipeline. The company did, and it built the pipeline in 2009. The dispute now is what amount of compensation, if any, is due to Murray from REX as a result of the pipeline.

The compensation issue is set for a hearing before the Commission that this Court appointed pursuant to Federal Rule of Civil Procedure 71.1 to address such matters. In advance of the hearing, REX has filed a motion for summary judgment that seeks to foreclose or in the alternative limit the damages issues based upon the purported effect of FERC decisions. (ECF No. 967.) Murray opposes summary judgment and in turn has filed a motion that asks this Court to issue supplemental instructions to the Commission that among other things would expand damages to include the value of the coal beneath the pipeline. (ECF No. 1023.) After multiple filings spread over too many months, the motions are finally ripe for disposition.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

As a threshold issue this Court is compelled to comment on the parties' inherently impermissible filings. The parties' briefing throughout the course of this litigation has hardly

3

been a model of restraint. The Local Civil Rules provide for a motion and supporting memorandum, a memorandum in opposition, and a reply memorandum. S. D. Ohio Civ. R. 7.2(a)(1)-(2). This was the briefing plan the Court contemplated when it set the April 15, 2011 non-oral hearing on the motion for summary judgment. (ECF No. 968.) Sadly, this Court's case management schedule soon became merely aspirational, however, as REX, following Murray's lead in requesting an earlier extension of time (ECF Nos. 982, 983), itself requested successfully an extension of time beyond the non-oral hearing date to complete summary judgment briefing (ECF Nos. 986, 987). The extra time needed became understandable when REX filed its reply memorandum, which contained an additional or at least differently characterized argument that departed from the original motion. This led Murray to seek permission to file a sur-reply memorandum, which the Court was compelled to accept given the reply memorandum. (ECF Nos. 992, 993, 994.)

Given the lost non-oral hearing date, the parties' delays pushed them to the back of the line in this Court's workload. When the Court was able to resume coordinating work on this case with other cases and motions requiring attention, the parties again intervened. REX filed a notice of supplemental authority that contained argument as to how the case cited affected the case *sub judice*. (ECF No. 1004.) This is of course incorrect. Supplemental argument removes the filing from being simply a notice and casts the document as an additional memorandum prohibited by the Local Civil Rules. S. D. Ohio Civ. R. 7.2(a)(2) ("No additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."). This in turn led Murray to file a motion seeking leave to file a response to the supplemental "notice," which the Court granted. (ECF Nos. 1007, 1008.)

Several weeks later, Murray filed its essentially intertwined motion to amend the Commission instructions, which necessitated additional briefing and a new non-oral hearing date. (ECF Nos. 1023, 1024.) Days after REX filed its memorandum in opposition (ECF No. 1026), Murray mirrored REX's earlier filing of impermissible supplemental authority by filing its own notice of the filing of a deposition to support opposition of the long-pending summary judgment motion. (ECF No. 1029.) This latest notice also included argument on how this Court was to read the belated summary judgment evidence, again leaving S. D. Ohio Civ. R. 7.2(a)(2) a tragic casualty of this litigation.

The end result is not simply an unnecessarily long delay in this Court rendering a decision on a core issue of the parties' dispute, but the Court having to do so within the context of impermissible filings that are of some relevance to the issues presented. Perhaps understandably, no party has objected to the other side's impermissible filings. Given the substantive content of the documents filed and in light of no objection, the Court has elected to forego striking the material filed without leave so that it can instead reach the full merits. The parties should not again rely on such a gamble in the future.

Having determined what material the Court will consider, this Court turns to the merits of the parties' motions.

The positions of the parties are relatively simple. REX argues that the FERC decision removes from potential dispute the issue of whether Murray can conduct safe mining operations. The pipeline company argues that FERC has decided that Murray can, that this is a conclusive decision foreclosing revisiting before the Commission (and this Court) the safe mining issue, and that the effect of the FERC decision is that the pipeline has no negative effect on Murray's coal

interests. REX therefore requests that the Court conclude that dismissal is warranted of "any damages based upon the alleged inability to safely mine underneath the REX pipeline after implementation of REX's Construction and Operation Plan." (ECF No. 967, at 21.) In other words, the pipeline has no effect on Murray. In the alternative, REX asks that if Murray provides evidentiary support for damages incurred while engaged in safe mining operations under the pipeline, this Court issue a proffered instruction that prohibits collateral attack on the FERC decision and the Construction and Operation Plan.

Murray opposes both dismissal and REX's alternative limiting instruction. The premise of Murray's argument is that although the pipeline itself lies beyond challenge, *how* the pipeline impacts Murray's coal interests remains an open issue. Tracking REX's own language employed in briefing in the dismissed Case No. 2:09-cv-284, Murray presents an argument that even REX once argued that Murray's damages issues were properly part of the instant case. Murray also directs this Court to REX's position during appellate oral argument in regard to the dismissed case, which the court of appeals summarized as follows:

> At oral argument, [REX] acknowledged that the condemnation court may award damages for *all* of the coal companies' injuries, no matter the label given to the theory of relief. Oral Arg. at 39:17-39:57 (Court [to pipeline company's counsel]: "You're not conceding anything in terms of the merits of any of these theories of relief, the amounts of damages, types of damages . . . . But as a matter of jurisdiction- the power of Judge Frost in that other action-he can *consider* them? He [just has to] deal with what the rules of law are with respect to each theory?" Pipeline company's counsel: "Yea, he can consider them."). And in its letter brief, it acknowledged the same thing.

*Am. Energy Corp.*, 622 F.3d at 607. As a result of such concessions and giving the FERC action its proper effect, Murray argues, there is a distinction between what can be done (*i.e.*, safe mining) and the effects of what can be done (*i.e.*, consequent damages). Murray thus suggests

that the damages claimed could encompass interests affected by the pipeline related to "surface use for portals, intake air shafts, return air shafts, bleeder air shafts, coal conveyance, preparation, transportation and other activities," in addition to Construction and Operations Plan protocols that Murray characterizes as "unfunded mandates" that result from the forced relationship with REX. (ECF No. 984, at 13.)

Both sides make some good points while also overreaching. FERC permitted REX to construct the pipeline over Murray's mine. Consequently, that Murray can continue to mine even with the pipeline in place is a settled issue beyond this Court's ability to dispute (and by extension beyond the purview of the Commission). There is no prohibition on longwall mining and subsidence beneath the pipeline. Any windfall claim by Murray that its damages include compensation for REX wholly preventing such mining is thus foreclosed.

But the evidence could show other effects. If, for example, REX's easement rights for the pipeline damage Murray's efforts to obtain coal by increasing the costs of mining, it would unquestionably be a compensable injury properly before the Commission.

REX would have this Court accept the proposition that the FERC proceedings have foreclosed the possibility that Murray will incur additional expenses; the pipeline company's premise is that "there is no impediment to the Murray Companies' ability to mine its mineral estate." (ECF No. 1026, at 7.) Such a conclusion broadens the protective cloak the FERC provides while ignoring precedent.

The Sixth Circuit has regarded this specific compensation action as an encompassing mechanism providing a means for relief for claims beyond what REX insists the Commission can reach. The court of appeals noted in a related appeal that "[n]o one doubts that the

statutorily authorized condemnation action is designed to compensate the coal companies for the losses caused by construction of the pipeline." *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 606 (6th Cir. 2010). Because REX's take of an interest in the surface estate *could* affect Murray's coal interests, Murray is entitled to pursue before the Commission compensation for any such damages related to normal mining operations and is therefore entitled to an appropriate instruction to the Commission.

FERC said there can be safe longwall mining and subsidence. These are settled issues. A lack of a dispositive impediment preventing safe mining is not the same things as the lack of any increased expenditure that necessarily accompanies the safe mining (as opposed to unnecessary expenditures made for purposes of creating damages for this litigation). FERC did not say that safe longwall mining and subsidence come without a larger price tag as a result of the pipeline. What can be done and how much it costs are two different things.

There may indeed be a taking of Murray's interests, contrary to REX's position, or there may not, depending on the evidence presented. The evidence may indicate necessary modifications to Murray's mining technique or practices, or it may indicate that there are simply no plans to mine the coal regardless of whether modifications would be necessary. These issued are tied to evidence not yet before this Court and remove disposition of the parties' debate from the ambit of the potentially not analogous *State ex rel. Goeglein v. Wray*, No. 00AP-424, 2000 WL 1678031 (Ohio 10th Ct. App. Nov. 9, 2000). That case had an evidentiary record. This case does not yet. That REX has cast its motion as one for summary judgment does not render the cases indistinguishable given the limited yet sufficient support for a factual dispute the John Sabo affidavit presents (and to a far lesser extent the fact that discovery remains ongoing).

Murray need not prove its damages here, and it has not; Murray need only point to a factual dispute, and it has just accomplished that task.

In additional to failing to embrace REX's expansive view of FERC's narrowing reach, the Court also declines REX's notably premature invitation to conclude that "the requested coordination and communication [between Murray and REX over anticipated subsidence] places no additional burden on the Murray Companies that would entitle the Murray Companies to compensation." (ECF No. 1026, at 5.) This is an evidentiary matter. Murray may assert that such an additional burden does exist, and Murray would then have to prove its assertion to obtain any relief sought. The Court does agree with REX, however, that the accrued additional costs issue does not require specific amendment of the Commission instructions. The issue is subsumed within the existing instructions and in the supplemental instruction given below.

This Court similarly declines to accept Murray's argument that the existing "other natural assets" Commission instruction warrants modification. As REX correctly notes in its briefing, the current instructions encompasses both any alleged impact of the pipeline on a right to subside the surface and any impediment to the ability to remove coal.

In light of the foregoing, the Court agrees with the parties that a supplemental instruction is warranted. This Court disagrees with the proffered instructions, however, and instead issues only the following supplemental instruction to the Commission, culled in part from the parties' offerings and from the Sixth Circuit's own language:

> The Murray Companies cannot present, and the Commission is precluded from considering, any argument or evidence that the Murray Companies cannot safely mine underneath the pipeline. That the Murray Companies can safely mine underneath the pipeline is a settled issue outside the jurisdiction of the Commission. The Murray Companies can, however, pursue damages that are an outgrowth of safe mining underneath the pipeline. This includes any necessary additional costs or

stigma damages that relate to the sale of the coal interests to a potential purchaser, although such stigma damages are restricted to those inherently arising from the existence of the pipeline itself and not from any specific concerns over whether FERC's decision as to pipeline safety is correct.  In other words, the Murray Companies can argue perceived stigma but cannot argue stigma arising from a contention that the pipeline plan is in fact flawed.

Under Ohio law, the landowner in an eminent domain action is entitled both to the value of the taken land and to "damages" to the "residue" of the property. Damages to the residue compensate for any injury that may result to the remaining lands by reason of the construction of the proposed improvement, measured by the difference in the residue's fair market value before and after the taking.  In determining fair market value, the Commission should take into consideration every element that can fairly enter into the question of value.

Therefore, in regard to the Murray Companies specifically, the Commission may award damages for *all* of the coal companies' injuries, if any, that are not speculative or future injuries, no matter the label given to the theory of relief.  If the Commission concludes that a component of the coal companies' case turns on speculative or future injuries, however, the Commission shall decline to award compensation on that component and shall instead recommend to the Court that it be dismissed without prejudice so that the coal companies could present the claim or claims when they ripen into concrete, present injuries.

*See Am. Energy Corp.*, 622 F.3d at 606-07.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** REX's motion for summary judgment (ECF No. 967) and Murray's motion to amend the Commission instructions (ECF No. 1023).

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE